**In the Interest of F.J.K. and K.H.K.**

No. 18315.

Court of Civil Appeals of Texas, Fort Worth.

Oct. 30, 1980.

McGuire, Levy & McCurley, Irving, Jonita Boyd Borchardt, Denton, for appellant.

L. A. Nelson, Denton, for appellee.

## OPINION

MASSEY, Chief Justice.

This is a suit seeking a change in custody of the minor children from the mother to the father. The trial court granted a change instating the father as the managing conservator, the mother as the possessory conservator. The mother has appealed.

We affirm.

■ The parties agree that the burden of proof rests on the non–custodial parent, where he or she seeks to change custody previously granted by court decree to the other spouse. Tex.Family Code Ann. sec. 14.08, "Modification of Order", effective September 1, 1975. Furthermore, they are in accord with this court's earlier interpretation of the requirements of Sec. 14.08. *D.W.D. v. R.D.P.*, 571 S.W.2d 224 (Tex.Civ.App.–Fort Worth 1978, writ ref'd n. r. e.). In that case we held that the movant father carried the burden to provide evidence to the fact finder that (1) the retention of the mother as managing conservator would be injurious to the welfare of the children; (2) that the circumstances of the children had materially and substantially changed since the prior order by which the mother had become managing conservator; and, (3) that the appointment of a new managing conservator for the children would result in a positive improvement in their circumstances.

On the appeal by the mother the points of error are (a) no evidence or, in the alternative, insufficient evidence to support the trial court's finding that retention of the mother as managing conservator would be injurious to the welfare of the children; and, (b) no evidence, or in the alternative, insufficient evidence to support the trial court's conclusion that the appointment of the father as managing conservator and the mother as possessory conservator of the children would result in a positive improvement for the children. The mother nowhere attacks the trial court's conclusion that the circumstances of the children had materially and substantially changed since the prior order by which the mother's legal custody was decreed. The date of that order was 19 April, 1978, pursuant to divorce decree of their parents.

■ We have reviewed the entire record. We find ample evidence supporting the appointment of the father as managing conservator replacing the mother as the full time custodian of the children. After viewing the evidence we find that the determination of the court was not so contrary to the greater weight and preponderance of the evidence as to be clearly erroneous.

■ We next discuss the trial court's determination of the "threshold inquiry"; its holding that the retention of the mother as managing conservator would be injurious to the welfare of the children.

The parents were divorced on April 19, 1978. At that time the mother was made managing conservator. The father filed his petition to modify custody July 27, 1979. Judgment granting modification was rendered October 11, 1979. The father married a new wife on October 21, 1978. The mother married a new husband April 21, 1979, (following conviction of her new husband by jury verdict of April 9, 1979, in Refugio County, Texas, that on or about January 21, 1979, he was in possession of a usable quantity [650 lbs.] of marijuana of more than four ounces. On date of the trial of the modification of custody proceeding, the trial judge had not determined what the sentence would be—and said new husband remained free on bond.) By January 21, 1979, said new husband was in residence at the home of the mother in the presence of the children. During the latter part of the new husband's residency–before their formal marriage–this couple considered themselves to be husband and wife. About the middle of August 1979 the children's mother moved from Denton to Carrollton, Texas. Prior to the move she resided in what had been the home of the parties during their marriage. The location from which she moved was convenient to the father's place of employment and the children's nursery school. It appears the mother's move to Carrollton contributed to the father's decision to file suit seeking change of custody.

At time of the hearing below the children were of tender years, the girl being right at 6 years old and the boy being a little under the age of 3.

By the undisputed evidence the father formerly had been able to and did continue his association with the children in a manner nearly identical to that in previous years. Though he regularly paid child support he managed to have the children live with him in his household for approximately the same period each week they lived with their mother. Initially the mother attended school and she later obtained employment in or near Dallas, commuting from Denton. The father enrolled the children in nursery school and attended to their arrival and departure on all days of the week, whether they were staying with him or their mother. He saw to their medical needs, taking the oldest to the hospital and staying with her during a tonsillectomy. He took the children's dog to the vet to be immunized during a rabies scare to assure their protection. This contact with the children continued after the mother's remarriage though it diminished somewhat when the mother's plan to move away from Denton was disclosed.

The evidence supports the court's belief of the following:

(1) The father's concern for the children's safety following the arrest of the mother's new husband for felony possession, those fears being connected with the possibility of vengeance being sought by third parties against the new husband in the home where the children resided; (2) The mother's neglect of the children's religious upbringing; the mother having never given any attention to it. (An atheistic philosophy was discussed by the new husband to some extent with the daughter, prompting her to advise her nursery school teacher that she was "not a Christian or a Jew but an atheist.") The propensity of the children's father for religious training of the children has manifested itself only since his divorce and remarriage, his new spouse being far more inclined in that direction. (3) The danger to the physical condition of the children stemming from neglect of the mother or the mother's new husband as evidenced by two experiences of the boy. On the

first, the boy's lip had been split. The father took him to a doctor who applied stitch or stitches fastening the torn edges together. The doctor's instruction was to return the child on a certain date for the removal of the stitch(es). Prior to that date and contrary to the father's admonishments to return the boy to the doctor, the mother's new husband removed them himself on the theory that there was no need to follow the doctor's instruction. On another occasion, prior to leaving town for a week, the father instructed the mother that if the infectious sores in the area of the boy's nostrils did not clear up the boy should be taken to the doctor. When an actual infection developed in the nature of impetigo the mother did not obey the instruction, with the result that the infection was found to be in an advanced condition by the time of the father's return. He took the boy to the doctor to have the condition attended and remedied. (4) Remarks by the new husband disparaging the children's father in their presence on more than one occasion, plus threats or intimation that he would prevent the father from seeing the children; (5) The new husband having referred to the children as "God–damned kids" in their hearing in a threatening conversation over the telephone with the children's father in such a manner as to cause the children to cry; (6) The existence of a harmful deficiency in the hygienic and sanitation care of the children, particularly the little boy, resulting in comments and complaints by the baby sitter that the children were delivered to her from the mother's care in a dirty and unhygienic condition–in contrast to their condition on the occasions when they had been with the father the previous night.

We have listed only some of the evidence which the trial court was entitled to consider and rely upon in the determination that permitting continuation of the mother as custodian (managing conservator) would be injurious to the welfare of the children.

Such finding was supported by evidence, as is shown, and it was not so contrary to the greater weight and preponderance of the evidence as to be clearly erroneous.

Judgment is affirmed.